**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**ROANOKE DIVISION**

CLERKS OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED

FEB 02 2021

JULIA C. DUDLEY, CLERK
BY:  s/ H. MCDONALD
       DEPUTY CLERK

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| | ) | |
| | ) | |
| **v.** | ) | **Criminal No. 4:21cr2** |
| | ) | |
| | ) | |
| **BOBBY LEE JAMES,** | ) | **By: Hon. Robert S. Ballou** |
| | ) | **United States Magistrate Judge** |
| *Defendant.* | ) | |

**<u>REPORT & RECOMMENDATION</u>**

In accordance with the provisions of Title 28 U.S.C. § 636(b)(3), and upon the Defendant's informed and written consent, this case was referred to me for the purpose of conducting a plea hearing.

The Government charged the Defendant in a two-count Information. Count One charges that on or about October 1, 2010 to December 19, 2018, the Defendant Bobby Lee James did knowingly use, transfer, acquire and possess food stamp coupons, through an EBT Card, having a value in excess of $100 in a manner contrary to the Food Stamp Act (Title 7, United States Code Section 2011, et seq.) and the regulations to that program, to wit, Defendant, by and through others, received $1,835,767.81 in EBT deposits for food sales that never actually occurred or were substantially inflated in violation of 7 U.S.C. § 2024(b). Count Two charges that on or about October 1, 2010 to December 19, 2018, the Defendant Bobby Lee James for the purpose of executing and attempting to execute the scheme to defraud, did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate or foreign commerce, any writings, signs, pictures or sounds for the purpose of executing such scheme and

artifice, that is, Defendant knowingly used and caused to be used a point of sale device inside Seafood & More to redeem electronic benefits for unauthorized and unlawful purposes, which caused communications to be sent from a point of sale device in Virginia to Texas, to wit: Defendant by and through others, received $1,835,767.81 in EBT deposits for food sales that never actually occurred or were substantially inflated in violation of 18 U.S.C. § 1343. These events were charged as occurring within the Western District of Virginia.

The plea hearing was conducted before me on January 27, 2021. The Defendant was at all times present in person and with his counsel, Joe Garrett. The United States was represented by Charlene Day, Assistant United States Attorney. The Defendant, after counseling with counsel, consented to proceed with the hearing by video teleconference. A written document titled "Consent to Proceed by Video Conference" was signed by the Defendant and entered into the record of the court. The proceedings were recorded via ZoomGov. See Fed. R. Crim. P. 11(g).

With the Defendant's informed and written consent, I made a Rule 11 inquiry; the Government presented a written Statement of Facts signed by the Defendant, his attorney and the attorney for the Government which was filed into the record for the purpose of establishing an independent basis for the Defendant's plea; and the Defendant entered a plea of guilty to the offense charged in Counts One and Two of the Information.

## DEFENDANT'S RESPONSES TO RULE 11 INQUIRIES

The Defendant was placed under oath and addressed personally in open court. He expressly acknowledged that he was obligated to testify truthfully in all respects under penalty of perjury and that he understood the Government's right, in a prosecution for perjury or false statement, to use any statement that he gives under oath against him. See Rule 11(b)(1)(A).

2

The Defendant testified to the following personal facts: his name is Bobby Lee James. He is 69 years of age and completed school through the 11th grade. He is a citizen of the United States, and is able to read, write, and understand English without difficulty. He testified that he suffers some memory problems, but he addresses his condition with medical treatment. He further testified that he was able to understand and participate in the proceeding. He stated that he was using no alcoholic beverage, medication, or drugs which might impair his ability to participate fully in the proceeding. He stated that he understood he was in court for the purpose of entering a plea of guilty to a felony offense, which he could not later withdraw. Upon inquiry, the Defendant's attorney, who has known Defendant for ten years, represented that Defendant was fully competent to enter a plea of guilty to the felony offenses charged in Counts One and Two of the Information.

The Defendant confirmed that he fully recognized and understood his right to have the Rule 11 hearing conducted by a United States District Judge, and he gave his verbal and written consent to proceed with the hearing before me. The Defendant's written consent was filed and made a part of the record.

The Defendant acknowledged that he had received a copy of the Information; it had been fully explained to him; he had discussed the charges with his attorney; and he had been given enough time to do so. He stated that he understood the nature of the charges against him in the Information and specifically understood that it charged two felony offenses. See Rule 11(b)(1)(G). He waived his rights to prosecution by indictment and consented to prosecution by information, and the Defendant's written consent was filed and made a part of the record. He stated that his decision to enter a plea of guilty to Counts One and Two had been made after consulting with his attorney. He stated he was fully satisfied with the services of his attorney,

and it was his intention and desire to enter a guilty plea to the felony offenses described in the Information.

Counsel for the parties previously informed the Court that the Defendant's proposed plea of guilty was to be made pursuant to a written plea agreement. See Rule 11(c)(2). Counsel for the Government set forth the Government's understanding of the plea agreement in some detail, including: the agreement for the Defendant to plead guilty to knowingly using, transferring, acquiring and possessing food stamp coupons, through an EBT Card, having a value in excess of $100 in a manner contrary to the Food Stamp Act and the regulations issued pursuant to that program (Count 1) [¶ A.1]; the agreement for the Defendant to plead guilty to transmitting and causing to be transmitted by means of wire, radio, and television communication in interstate or foreign commerce, any writings, signs, pictures or sounds for the purpose of executing such scheme and artifice (Count 2) [¶ A.1]; the Defendant's express acknowledgment of the maximum sentence for the offense [¶ A.1]; the Defendant's admission of his factual guilt as to Counts One and Two of the information and his stipulation that there is a sufficient factual basis to support each and every material allegation underlying the said charges to which he was proposing to plead guilty [¶ A.1]; the Defendant's express acknowledgment of the trial rights waived by entry of a voluntary plea of guilty [¶ A.2]; the agreement's provision outlining the fact that sentencing is within the sole discretion of the Court, "subject to its consideration of the United States Sentencing Guidelines" and the factors set forth in 18 U.S.C. § 3553(a) [¶ B.1]; the Defendant's express recognition that he would not be allowed to withdraw his guilty plea irrespective of the sentence imposed by the Court [¶ B.1]; the Defendant's stipulation that all matters pertaining to Counts One and Two of the Information are relevant sentencing conduct [¶ B.2]; the Defendant's stipulation to the 2B1.1(a)(1) and 2B1.1(b)(1)(I) guideline sections

[¶ B.2]; the terms of the acceptance of the responsibility provision [¶ B.2]; the scope of the Defendant's express waiver of his right of direct appeal [¶ C.1]; the scope of the Defendant's express waiver of his right to make any collateral attack on any judgment or sentence imposed by the Court [¶ C.2]; the Defendant's acknowledgment that he had been effectively represented in this case [¶ E.3]; the parties express acknowledgment that the written plea agreement constituted the entire understanding between the parties [¶ E.5]; and the substance of the agreement's other terms and provisions. See Rule 11(b)(1)(B)–(N) & 11(c)(1)–(3).

The Defendant was asked what his understanding of the terms of the agreement were, and he testified that his understanding was precisely the same as that set forth by the Government's attorney. He further represented that he had reviewed and initialed every page with his lawyer. Counsel for the Defendant, likewise, represented that his understanding was the same and he stated that he was satisfied that the Defendant understood all of its terms. The Defendant was shown the plea agreement, and he affirmed it to be his signature on the document. He further testified that no one had made any other, different, or additional promise or assurance of any kind in an effort to induce him to enter a plea of guilty and that no one had attempted in any way to force him to plead guilty in this case. See Rule 11(b)(2). The agreement was then received, filed, and made a part of the record. The Defendant acknowledged that he knew his plea, if accepted, would result in his being adjudged guilty of a felony offense.

After the range of punishments for the offenses charged in Counts One and Two of the Information had been outlined to the Defendant, he acknowledged that he understood the maximum penalty provided by law for conviction of Count One to be confinement in a federal penitentiary for twenty (20) years, a $250,000 fine, a term of supervised release, and suspension from participation in the supplemental nutrition program. See Rule 11(b)(1)(H). The Defendant

acknowledged that he understood the maximum penalty provided by law for conviction of Count Two to be confinement in a federal penitentiary for twenty (20) years, a $250,000 fine, and a term of supervised release.[1] See id. In addition, the Defendant acknowledged that he understood that he would be required to pay a mandatory $100.00 special assessment as to each felony count and he may be required to pay restitution as imposed by the Court. See Rule 11(b)(1)(L).

The Defendant was informed, and he expressly acknowledged, that the Court's determination of his sentence would include consideration of multiple factors, including: the nature and circumstances of the offense; the Defendant's history and characteristics; the seriousness of the offense; the need to promote respect for the law; the need to provide for just punishment and afford adequate deterrence; the need to protect the public; any determined need to provide the Defendant with educational or vocational training, medical care, or other correctional treatment in the most efficient manner; the kinds of available sentences; the pertinent sentencing guidelines and policy statements; the need to avoid unwanted sentence disparities; any applicable forfeiture; and any need to provide for restitution. See Rule 11(b)(1)(J)–(K).

The Defendant testified that he and his attorney talked about how the Sentencing Commission Guidelines might apply to his case and the Court's obligation to calculate the applicable sentencing-guideline range and to consider that range, possible departures under the Guidelines, and other factors under 18 U.S.C. § 3553(a). See Rule 11(b)(1)(M). He stated that he understood that the Court will not be able to determine the recommended guideline sentence for his case until after the presentence report has been completed and he and the Government each had an opportunity to challenge the facts reported by the probation officer.

---

[1] The Assistant United States Attorney and Counsel for Defendant agreed that Count Two has a supervised release period of three, as opposed to five, years as stated in the Plea Agreement.

The Defendant acknowledged that he knew the entry of a guilty plea constituted an admission of all of the elements of a formal felony charge, and he knew that, irrespective of any sentence imposed by the Court, he would have no right to withdraw this guilty plea. He acknowledged that he knew parole had been abolished and that he would not be released on parole. He further acknowledged that he knew and understood any sentence of incarceration imposed by the Court would also include a period of supervised release, and he knew any violation of the terms or conditions of such supervised release could result in his being returned to prison for an additional period of time. See Rule 11(b)(1)(H).

Each of his procedural rights surrendered on a plea of guilty were also explained, including: his right to plead not guilty to any offense charged against him and his right to persist in any such not guilty plea; his attendant right to a trial by an impartial jury; his right to counsel to assist in his defense; his presumption of innocence; the obligation of the government to prove his guilt beyond a reasonable doubt; his right at trial to see, hear, confront, and cross-examine all witnesses presented against him; his right to decline to testify unless he voluntarily elected to do so in his own defense; his right to remain silent; his right to the issuance of subpoenas or compulsory process to compel the attendance of witnesses to testify in his defense; and his right to a unanimous guilty verdict. See Rule 11(b)(1)(B)–(E). The Defendant testified that he understood his right to plead not guilty and the attendant trial rights that he would waive by pleading guilty. See Rule 11(b)(1)(F).

Pursuant to the terms of the plea agreement, the Defendant expressly acknowledged that he understood that he was giving-up all waivable rights to appeal. Likewise, pursuant to the terms of the plea agreement, he expressly acknowledged that he understood he was giving up all waivable rights to challenge his conviction in any post-conviction proceeding.

The Defendant acknowledged that in the event he received a more severe sentence that he expected, or the Court did not accept any sentencing recommendation by the Government, he would still be bound by his guilty plea and would have no right to withdraw it. In addition, he expressly acknowledged that as part of any sentence, the Court may order him to serve a term of post-incarceration supervised release and that, if he violated the terms of his supervised release, he could be returned to prison for an additional period of time.

In direct response to further questioning, the Defendant also testified that he was pleading guilty to the offense charged in Count One because he had in fact knowingly used, transferred, acquired, and possessed food stamp coupons, through an EBT Card, having a value in excess of $100 in a manner contrary to the Food Stamp Act and the regulations issued pursuant to that program. He testified that he was pleading guilty to the offense charged in Count Two because he had for the purpose of executing and attempting to execute the scheme to defraud, did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate or foreign commerce, any writings, signs, pictures or sounds for the purpose of executing such scheme and artifice.

To permit the Court to determine whether an independent basis in fact existed for the Defendant's plea, counsel for the Government filed into the record a written statement of facts signed by the Defendant and all counsel. The Defendant and his counsel did not contest any of the facts set forth by the Government.[2] See Rule 11(b)(3).

After testifying that he had heard and understood all parts of the proceeding and after consulting further with his attorney, the Defendant stated that he remained ready to plead guilty

---

[2] Defendant initially disagreed with several facts involving dates and the calculation of the loss amount. In direct response to further questioning the Defendant agreed to these facts. Defendant's counsel represented that he conducted a full and adequate investigation and that he also believed the facts were accurate.

pursuant to the terms of the plea agreement. Thereupon, Counts One and Two of the Information were read to the Defendant, he was called upon for his plea, and he entered a plea of GUILTY to the offense charged in Count One alleging his violation of 7 U.S.C. § 2024(b) and the offense charged in Count Two alleging his violation of 18 U.S.C. § 1324. The clerk read the written guilty plea form to the Defendant; after acknowledging it to be correct, the Defendant executed it, and it was filed and made a part of the record.

The Defendant was then informed that acceptance of the plea agreement and his guilty plea would be recommended to the presiding District Judge, that a presentence report would be prepared, that he would be asked to give information for that report, that his attorney may be present if he wished, and that he and his attorney would have the right to read the presentence report and to file objections to it.

## GOVERNMENT'S EVIDENCE

The Government proffered that matters leading to Counts One and Two of the Information occurred in the Western District of Virginia. Defendant is the owner and operator of Seafood & More, a Virginia sole proprietorship doing business in Danville, Virginia, within the Western District of Virginia. Seafood & More is a business that stocks a very limited inventory of food and beverage products other than seafood.

On or about September 13, 2009, a Food and Nutrition Service ("FNS") Form 252 was submitted to FNS for Seafood & More located in Danville, Virginia. On or about September 24, 2009, Seafood & More was licensed by FNS to participate in the food stamp program as a Supplemental Nutrition Assistance Program ("SNAP") retailer. Seafood & More is currently using FNS SNAP license #0210167. Seafood & More's SNAP license is categorized as "Seafood Specialty."

Seafood & More's monthly SNAP redemptions exceeded the state average of all other Seafood Specialty class stores in Virginia by more than $2,465,555 from October 2010 to July 2018. The average individual SNAP purchase at Seafood & More is almost double that of the average individual SNAP purchase in the state of Virginia.

Law enforcement performed surveillance of Seafood & More on August 10, 2017, using a fixed video camera to record the front of the store and adjacent parking lot. Law enforcement identified at least seven high-dollar transactions where the EBT holder made a large purchase with their EBT card but left the store with little or no products to support the transaction amount. During the month of July 2018, Seafood & More conducted 631 transactions for SNAP benefits. Of these 631 transactions, 37 of them exceeded the average purchase amount of a Seafood Specialty store in the state of Virginia by 300 percent ($124.36) or more.

From on or about October 1, 2010 through December 19, 2018, Defendant and others redeemed and caused to be redeemed EBT benefits in exchange for cash in violation of the food stamp program rules and regulations. Six of these transactions were part of an undercover operation where the undercover agent did a SNAP for fraud deal directly with cashiers at Seafood & More. As a result of these six unlawful cash transactions, Defendant, by and through others, received $901.50 in EBT deposits for food sales that never actually occurred or were substantially inflated. The loss for Seafood & More is $1,835,767.81. This is achieved by calculating the average individual transaction for stores of the same type in Virginia from October 2010 to December 2018. The average individual transaction at a store of this type during that time frame in Virginia was $24.90. The Government then triples that number, equaling $74.70. The Government then totals all transactions that occurred at Seafood & More from October 2010 through December 19, 2018 that exceeded $74.70, which equals $1,835,767.81.

In a December 19, 2018 non-custodial recorded interview, Defendant admitted that the clerks who committed SNAP fraud did so at his direction and he was the one who financially benefited from the crime. Defendant also admitted that he himself sometimes ran the transactions and stated that what he was doing was wrong.

During an interview, employee KP admitted to exchanging cash for SNAP benefits. In the interview regarding involvement with Seafood & More, KP stated that Defendant told her to give people cash for their SNAP benefits. On October 3, 2018, law enforcement, acting in an undercover capacity, performed a SNAP benefits for cash deal at Seafood & More. KP was the cashier who conducted the transaction.

Another employee, WB admitted to exchanging cash for SNAP benefits. In his interview regarding his involvement with Seafood & More, WB stated Defendant told him to give people cash for their SNAP benefits. On June 13, 2018, law enforcement, acting in an undercover capacity, performed a SNAP benefits for cash deal at Seafood & More. WB was the cashier who conducted the transaction.

Defendant knew that exchanging cash for EBT benefits was in violation of the laws, rules and regulations regarding the food stamp program and that he and others were consequently not entitled to the EBT deposits made by FNS into the Seafood & More account.

**FINDINGS OF FACT**

Based on the evidence, representations of counsel, and the Defendant's sworn testimony presented as part of the hearing, I submit the following formal findings of fact, conclusions, and recommendations:

1. The Defendant is fully competent and capable of entering an informed plea to the charge set forth in Counts One and Two of the Information;

2. The Defendant is fully aware of both the nature of the charges set forth in Counts One and Two and the consequences of his guilty plea;

3. The Defendant is fully informed, and he understands the applicable enumerated items set forth in Rule 11(b)(1)(A)–(N);

4. The Defendant's plea of guilty was made pursuant to a fully voluntary written plea agreement;

5. The Defendant's entry into the plea agreement and his tender of a plea of guilty pursuant to the terms of the plea agreement were made with the advice and assistance of counsel;

6. The Defendant knowingly and voluntarily entered his said plea of guilty;

7. The Defendant's plea of guilty did not result from force, threats, inducements, or promises other than those promises contained in the written plea agreement;

8. The plea agreement complies with the requirements of Rule 11(c)(1); and

9. The evidence presents an independent basis in fact containing each essential element of the offense to which the Defendant has entered a plea of guilty.

## RECOMMENDED DISPOSITION

Based on the above findings of fact, I **RECOMMEND** that the Court accept the Defendant's plea of guilty to the offense charged in Counts One and Two of the Information, that he be adjudged guilty of the said felony offenses, and that a sentencing hearing be set before the presiding District Judge.

## NOTICE TO PARTIES

NOTICE is hereby given to the provisions of 28 U.S.C. § 636(b)(1)(c): Within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may

serve and file written objections to such proposed findings and recommendations as provided by the rules of court. The presiding District Judge shall make a *de novo* determination of those portions of the report or specified findings or recommendations to which an objection is made. The presiding District Judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by me. The presiding District Judge may also receive further evidence or recommit the matter to me with instructions. A failure to file timely written objections to these proposed findings and recommendations within fourteen (14) days could waive appellate review.

The Clerk is further directed to transmit a copy of this Report and Recommendation to all counsel of record, and at the conclusion of the fourteen-day period, the Clerk is directed to transmit the record in this matter to Michael F. Urbanski, Chief United States District Judge.

Entered:  February 2, 2021

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge